Albert C. WALKER; Roberta M. Walker; John C. Soso; Jacklyn C. Soso; Margaret Smith; Alyce Crosdale; Betty Sands, Plaintiffs–Appellees,

v.

SAN FRANCISCO UNIFIED SCHOOL DISTRICT, Defendant,

and

United States Department of Education; Lamar Alexander, in his official capacity as Secretary of Education, Defendants–Intervenors–Appellants.

Albert C. WALKER; Roberta M. Walker; John C. Soso; Jacklyn C. Soso; Margaret Smith; Alyce Crosdale; Betty Sands, Plaintiffs–Appellees,

v.

BOARD OF EDUCATION OF the SAN FRANCISCO UNIFIED SCHOOL DISTRICT, City and County of San Francisco, State of California; Ramon Cortines, Superintendent of Schools, San Francisco Unified School District; San Francisco Unified School District, Defendants–Appellants.

Albert C. WALKER; Roberta M. Walker; John C. Soso; Jacklyn C. Soso; Margaret Smith; Alyce Crosdale; Betty Sands, Plaintiffs–Appellees,

v.

SAN FRANCISCO UNIFIED SCHOOL DISTRICT, City and County of San Francisco, State of California, Defendant,

and

Deborah Martin; Jacob Perea; Barbara Perea, Defendants–Intervenors–Appellants.

Albert C. WALKER; Roberta M. Walker; John C. Soso; Jacklyn C. Soso; Margaret Smith; Alyce Crosdale; Betty Sands, Plaintiffs–Appellees,

v.

William HONIG, as California Superintendent of Public Instruction; California Department of Education; California State Board of Education, Defendants–Appellants,

and

San Francisco Unified School District, Defendant.

Albert C. WALKER; Roberta M. Walker; John C. Soso; Jacklyn C. Soso; Margaret Smith; Alyce Crosdale; Betty Sands, Plaintiffs–Appellants,

v.

BOARD OF EDUCATION OF the SAN FRANCISCO UNIFIED SCHOOL DISTRICT; San Francisco Unified School District, City and County of San Francisco, State of California; Ramon Cortines, Superintendent of Schools, San Francisco Unified School District, Defendants–Appellees,

United States Department of Education; Deborah Martin; Lamar Alexander, in his official capacity as Secretary of Education; Jacob Perea; Barbara Perea, Defendants–Intervenors–Appellees.

Nos. 92–15977, 92–15979, 92–15982, 92–15983 and 92–15985.

United States Court of Appeals, Ninth Circuit.

Aug. 2, 1995.

## ORDER

The order denying the petition for rehearing and rejecting the suggestion for rehearing en banc, filed on July 5, 1995, is ordered published, along with Judge Reinhardt's dissent from the order rejecting the suggestion for rehearing en banc.

Filed July 5, 1995

Before: Thomas TANG, Stephen S. TROTT, and Ferdinand F. FERNANDEZ, Circuit Judges.

## ORDER

The panel has voted to deny rehearing and to reject rehearing en banc.

The panel voted as follows: Judges Tang and Trott vote to deny appellee's petition for rehearing. Judge Trott votes to deny suggestion for rehearing en banc. Judge Tang recommends rejection of the suggestion for rehearing en banc. Judge Fernandez would grant rehearing en banc.

The full court was advised of the suggestion for rehearing en banc. An active judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the unrecused active judges in favor of en banc consideration. Fed.R.App.P. 35. Judge Reinhardt dissents from the denial of rehearing en banc and is joined by Judge Pregerson; Judge Hawkins also joins the dissent excepting the first paragraph thereof.

The petition for rehearing is denied and the suggestion for rehearing en banc is rejected.

The dissent is ordered to be filed with this order.

REINHARDT, Circuit Judge, with whom PREGERSON, Circuit Judge, joins, and with whom HAWKINS, Circuit Judge joins as to all but the first paragraph, dissenting from the order rejecting the suggestion for rehearing en banc:

I find it difficult to understand what possible rationale could underlie our court's decision not to go en banc in this case. A panel of this court voted 2–1 to ignore the clear dictates of the United States Supreme Court as set forth in two major cases. It did so in a sensitive area of constitutional law involving the Bill of Rights. By failing to take this case en banc, we appear to endorse the panel's refusal to follow Supreme Court precedent and to signal to other panels that they too may ignore the binding effect of Supreme Court cases whenever they believe that the law should be different. Because I am certain that this is not the message the court wishes to send, I can only assume instead that our action today is a product of the fact that the panel's decision restricts rather than expands the protections afforded by the Constitution. Shrinking the Constitution is a popular course of action in the courts these days.

This case involves the furnishing of government aid to religious institutions in violation of the First Amendment. As Judge Fernandez explained in his dissent from the panel's opinion, our court was under a clear duty to invalidate the San Francisco Unified School District's provision of videos, overhead projectors, televisions, record players, and similar equipment to parochial schools. 46 F.3d 1449, 1470 (9th Cir.1995). In *Meek v. Pittenger*, 421 U.S. 349, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975) and *Wolman v. Walter*, 433 U.S. 229, 97 S.Ct. 2593, 53 L.Ed.2d 714 (1977), the Supreme Court held unequivocally that the state may not constitutionally provide equipment and materials other than textbooks to religious schools. Undaunted by these holdings, the majority of the panel approved the District's doing precisely what *Meek* and *Wolman* forbid. While acknowledging that the two cases prohibit the type of aid involved, the majority concluded that those Supreme Court's holdings do not bind us. Because in doing so the majority exceeded the authority granted to lower federal courts, and because it wrongly obliterated a constitutional distinction drawn by the Supreme Court in the critical Establishment Clause area, I dissent from our refusal to rehear this case en banc.

The distinction between textbooks and other educational materials is so clear and well-established as to defy legitimate judicial evasion. In *Meek*, the Court invalidated a state program under which materials and equipment were supplied to church-related schools. *Meek* distinguished the furnishing of secular textbooks to students, held constitutional in *Board of Education v. Allen*, 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968), from the furnishing of other instructional materials and equipment to religious schools. 421 U.S. at 362–63, 365, 95 S.Ct. at 1761–62, 1763. Because the provision of such materials and equipment had the primary effect of advancing religion, the Court concluded that the state's actions were impermissible. *Id.* at 366, 95 S.Ct. at 1763–64.

In *Wolman*, 433 U.S. 229, 97 S.Ct. 2593, 53 L.Ed.2d 714 (1977), the Court reasserted the bright-line distinction between secular text-

books and other educational materials and equipment. The Ohio statute at issue in *Wolman* provided for the loan of projectors, tape recorders, record players, and other equipment—*precisely the kind of equipment being provided here*—to parochial schoolchildren and their parents, rather than to the school itself. *Id.* at 249, 97 S.Ct. at 2606. Expanding upon its holding in *Meek*, the Court concluded that providing materials and equipment other than textbooks to parochial students was no different from providing such aid to the schools. Either way, the aid could be channeled toward religious purposes and was therefore unconstitutional. *Id.* at 250–51, 97 S.Ct. at 2606–07. Thus, the Court has squarely held that the state may not do what it is doing here. We are simply not free to ignore that ruling.

The panel majority in effect seeks to overrule *Meek* and *Wolman.* This is a feat that a court of appeals cannot legitimately accomplish. My two able colleagues present three arguments in support of their holding that the Establishment Clause does not prohibit the provision of overhead projectors, TV's, cassette recorders, VCR's, and similar equipment to parochial schools. Each is plainly without merit. The three arguments are as follows: (1) *Meek* and *Wolman* are distinguishable and do not actually prohibit this type of aid; (2) even if these cases do hold the provision of such aid impermissible, subsequent cases have undermined their reasoning; and (3) the distinction between textbooks and other educational materials and equipment makes no sense and should be abandoned in favor of a "neutrality" test.

First, as to the argument that *Meek* and *Wolman* are distinguishable, the majority opinion itself provides the answer: "In *Wolman*, the Court reaffirmed *Meek*'s holding that the distinction between textbooks and other educational materials and equipment is constitutionally significant." 46 F.3d at 1465. Later, the majority states: "Taken together, *Meek* and *Wolman* thus stood for the thin distinction—unmoored from any Establishment Clause principles—that state loans to parochial schools of instructional materials and equipment impermissibly advances religion, but state preparation and grading of tests and state loans of textbooks do not." *Id.* at 1466. That the majority views the distinction as "thin" and "unmoored" does not make it less binding. Unless the *Meek/Wolman* holding has been overruled by subsequent Supreme Court cases—and it has not—we remain bound.[1]

Second, the majority contends that subsequent cases have thrown the *Meek/Wolman* holding into question. The majority places its principal reliance on *Committee for Public Education and Religious Liberty v. Regan,* 444 U.S. 646, 100 S.Ct. 840, 63 L.Ed.2d 94 (1980), in which the Court upheld the use of public funds to reimburse church-related schools for the cost of performing state-mandated tests in secular subjects. *Regan,* however, expressly relies on the rationale set forth in *Wolman* and concludes that testing services in secular subjects (unlike projectors, televisions, and tape recorders) could not be used for religious purposes. *Id.* at 661–62, 100 S.Ct. at 850–51. Thus, *Regan* is

---

1. The majority proceeds to offer a thin distinction of its own. It argues that *Meek* and *Wolman* may be distinguished, because a smaller percentage of aid goes to private schools under Chapter 2 than in the statutes struck down in *Meek* and *Wolman.* 46 F.3d at 1468. The plaintiffs in this case, of course, do not assert that Chapter 2 must be struck down in its entirety—only that the state may not loan equipment and materials other than textbooks to parochial schools under Chapter 2 or any other statute. Thus, I fail to see how the percentage of Chapter 2 funds that goes to religious institutions has any bearing on the outcome of this case.

Even if one considered the percentages significant, the majority's attempt to distinguish *Meek* and *Wolman* rests on a false premise. The majority notes that 74% of Chapter 2 funds goes to public schools. *Id.* It then suggests that *Meek* and *Wolman* are distinguishable because most of the aid from those programs went to parochial schools. *Id.* Here, the majority simply misses a critical point. The *Meek* and *Wolman* statutes did nothing more than provide to private schools aid of the same type that was *already* being provided to public schools. *See Meek,* 421 U.S. at 351–52, 95 S.Ct. at 1756; *Wolman,* 433 U.S. at 234, 97 S.Ct. at 2598. We simply do not know what proportion of the total state aid of the type at issue went to public schools. *Meek* and *Wolman* do not describe the extent of that aid, which was furnished under statutes that were not before the Court. Thus, no comparison of the respective percentages is possible.

founded on and reinforces the *Meek/Wolman* distinction.[2]

The majority also relies on *Zobrest v. Catalina Foothills School District*, —— U.S. ——, 113 S.Ct. 2462, 125 L.Ed.2d 1 (1993), in which the Court upheld the provision of sign-language interpreters in public schools. However, *Zobrest* cites the aid provided in *Meek* as an *example* of what the Establishment Clause *prohibits*: "[T]he State may not grant aid to a religious school, whether in cash or in kind, where the effect of the aid is 'that of a direct subsidy to the religious school.'" *Zobrest*, at ——, 113 S.Ct. at 2468 (citations omitted). "For example, the religious schools in *Meek* received teaching material and equipment from the State, relieving them of an otherwise necessary cost of performing their educational function." *Id.* (citing *Meek*, 421 U.S. at 365–66, 95 S.Ct. at 1763–64). Contrary to the majority's contention, *Zobrest* expressly reaffirms the prohibition against providing materials and equipment other than textbooks to parochial schools.[3]

Finally, the majority argues that the distinction that the Court drew in *Meek* and *Wolman* makes no sense and should be discarded in favor of an amorphous neutrality test. 46 F.3d at 1466. Even if the majority were correct in that assessment, it would still have no excuse for failing to apply the law as it has been set forth by the Court. Whether or not a particular Supreme Court decision makes sense, we are obliged to follow it. If a change in doctrine is to be adopted, that can only be done by the Supreme Court, not by us. I should add one further point here. Although the Court has sometimes emphasized the need for flexibility in addressing new Establishment Clause problems, the flexibility we have been afforded does not permit us to reverse or discard existing Supreme Court precedent. Our flexibility is limited to instances in which we apply existing doctrine to specific questions that have not previously been decided by the Court.

The issue of aid to religious schools is of exceptional importance. What makes our decision not to go en banc in this case partic-

2. In support of its view that *Regan* undermined the distinction between secular textbooks and other equipment, the panel majority notes that *Regan* cited with approval a statement from Justice Powell's concurring opinion in *Wolman*. 46 F.3d at 1466. In *Wolman*, Justice Powell stated: "I am not persuaded, nor did *Meek* hold, that all loans of secular instructional material and equipment 'inescapably [have] the primary effect of providing a direct and substantial advancement of the sectarian enterprise.'" 433 U.S. at 263, 97 S.Ct. at 2613–14 (Powell, J. concurring). The majority does not however, quote the rest of Justice Powell's statement:

> [T]he Court [in *Meek*] expressly reaffirmed *Allen*, thereby necessarily holding that at least some such loans of materials helpful in the educational process are permissible—*so long as the aid is incapable of diversion to religious uses*, and so long as the materials are lent to the individual students or their parents and not to the sectarian institutions.

*Id.* (citation omitted, emphasis added). Under Justice Powell's view, the aid provided here would be unconstitutional, for *two* independent reasons. First, the District provides equipment that *is* capable of being diverted to religious uses. Second, the District provides this aid directly to sectarian institutions rather than to students.

Even if we choose to take *Regan* out of context, and ignore the opinion of Justice Powell upon which the Court relied, the statement quoted provides no support for the majority's position. As *Regan* correctly states, neither *Meek* nor *Wol-*

*man* held that "*all* loans of secular material and equipment" have the effect of directly advancing religion—only that loans of material and equipment *other than secular textbooks* have that effect.

3. In attempting to justify its departure from the rule laid down in *Meek* and *Wolman*, the majority asserts that it is relying on four cases: *Allen*, *Regan*, *Zobrest*, and *Grand Rapids School District v. Ball*, 473 U.S. 373, 105 S.Ct. 3216, 87 L.Ed.2d 267 (1985). 46 F.3d at 1465. *Allen* was decided *before Meek* and *Wolman* established the distinction between secular textbooks and other materials and equipment. Thus, it cannot be said to have implicitly overruled it. Nor, as explained in the text *supra*, can either *Regan* or *Zobrest* be said to undermine in any way the distinction drawn in *Meek* and *Wolman*. Finally, *Ball* provides no support whatsoever for the majority's attempt to write off the Supreme Court's holdings in these two landmark cases. In *Ball*, the Court held unconstitutional an after-school program providing instruction to parochial students in classrooms leased from parochial schools. *Id.* at 375, 105 S.Ct. at 3218. *Ball* relied on both *Meek* and *Wolman* in reaching its conclusion that there was a "substantial risk" that the program would be used for religious purposes and, consequently, that it violated the Establishment Clause. *Id.* at 386–88, 105 S.Ct. at 3223–25. Thus, like *Regan* and *Zobrest*, it cannot be said to overrule the very cases on which it relied.

ularly disturbing is that it represents an abdication of one of the most critical duties that the federal judiciary performs. We have few more urgent responsibilities than enforcing the constitutional boundary between church and state. When that boundary has been delineated by the Supreme Court, that is the boundary that we must apply. Perhaps some day the "high and impregnable" wall between church and state will be dismantled. Perhaps that day will even arrive shortly. But contrary to the majority's opinion, if it must come, it will be when the Supreme Court decides to tear the wall down, not when a panel of this court opts to begin the task. The Supreme Court has unequivocally held that the state may not aid religion by providing projectors, tape recorders, record players and similar equipment to parochial institutions. Our duty is to follow that holding.